SUTIN, Judge (specially concurring). {35} I concur in the Majority Opinion (the Opinion), but do so with misgivings about the WCA process. {36} As to the one-year limitations period, the Opinion assumes a two-month tolling from July 28, 2003, to October 1, 2003, Opinion ¶ 27; and then a stoppage based on the filing of the October 1, 2003, complaint, lasting until the case closure on February 13, 2004, Opinion ¶¶ 3, 27; or perhaps a stoppage until thirty days after Employer filed its accident report, Opinion ¶¶ 29-30. In any case, the Opinion affirms dismissal of Mrs. Schultz’s case with prejudice because her second complaint, filed June 18, 2004, was outside even the most liberal view of the time deadline. I do not quarrel with the Opinion’s time-deadline analysis. What moves me to specially concur is that the analysis is dependent on the premise that the mediator’s recommended dismissal without prejudice, followed by the case closure upon Mrs. Schultz’s failure to reject the recommended resolution, was appropriate and required the filing of an amended complaint within the one-year statute oflimitations in Section 52-1-31(B). It is this process that I address, after first discussing the time-deadline issues. Two-Month Tolling {37} Based on whole-record review, I agree with a July 28, 2003, to October 1, 2003, two-month tolling period. Employer engaged in “such conduct as would ‘in whole or in part’ reasonably lead [Mrs. Schultz] to believe compensation would be paid.” Elsea, 47 N.M. at 366-67, 143 P.2d at 579; see § 52-1-36. Approximately two months after Worker’s death, in October 2002, Employer filed with the Office of Justice Programs, Bureau of Justice Assistance, United States Department of Justice, a Report of Public Safety Officer’s Death, along with a Claim for Death Benefits by Mrs. Schultz. In April 2003, a Department of Justice benefits specialist prepared and signed a Public Safety Officers’ Benefits Act Claim Determination stating that W orker was off duty at the time of his rescue effort, yet also stating that Worker “died as a direct and proximate result of a personal injury sustained in the line of duty from drowning while attempting to rescue another person.” This determination was approved by the chief of the Department of Justice’s Benefits and Payments Division and the Department’s Office of General Counsel concurred in the determination in June 2003. Atotalbenefitof$259,038 was awarded. The Office of Justice Programs informed Mrs. Schultz by letter in June 2003 of the award. {38} In June 2003, Mrs. Schultz met with a retired police officer who assisted Mrs. Schultz as her financial counselor and together, in July 2003, they met with the Employer’s Police Chief in regard to workers’ compensation. The Chief told Mrs. Schultz and the counselor that he would take care of getting the workers’ compensation paperwork done. The Chief’s testimony that the possibility of workers’ compensation benefits had never occurred to him because Worker was off duty at the time of his death is not credible given Employer’s earlier report and Mrs. Schultz’s claim submitted to the Department of Justice and the Department’s determination that the death resulted from “injury sustained in the line of duty” and given that Employer was aware that Mrs. Schultz received compensation based on the documents submitted to the Department. {39} Also, on October 21,2003, Employer wrote a letter to Mrs. Schultz stating, “Your husband, Kevin Schultz, died in the line of duty. The Pueblo of Pojoaque will do anything necessary for you to receive survivor’s benefits, workmen’s compensation or any other benefits available to you and your grieving family.” Employer prepared its First Report of Injury on October 16,2003, and the report was submitted to the WCA on October 27, 2003. One might reasonably infer from the report and letter that Employer was sufficiently aware in July 2003 of the possibility that Worker’s death was compensable. The Remaining Time {40} Based on the mediator’s recommended dismissal and the WCA case closure on February 13, 2004, the Opinion allows Mrs. Schultz twenty-one days from that case closure date within which to file the amended complaint mentioned in the recommended resolution. This set a drop-dead date of March 5, 2004. If there had been no dismissal by the mediator, there would have been no limitations issue save that of whether Employer reasonably led Mrs. Schultz to believe that compensation would, in whole or in part, be paid. Hence the significance of the question whether the recommended dismissal and its effect were appropriate and effective to trigger a requirement that Mrs. Schultz file an amended complaint within the limitations period, which as the Opinion analyzes it with tolling and stoppage times, was twenty-one days following the February 13, 2004, WCA case closure. Failure to File Accident Report {41} In regard to Employer’s failure to file an accident report, the Opinion assumes, for the purpose of its analysis, that Employer had a duty to file an accident report much earlier than Mrs. Schultz’s October 1, 2003, complaint. Op. ¶¶ 28-30. In my view, Employer had a duty under Section 52-1 - 58(A) to file its First Report of Accident within ten days of Worker’s death or within ten days after Employer received notification of Worlcer’s death. An employer has a duty to timely file the First Report of Accident and to send a copy of the report to the injured worker. Id. The Employer’s First Report of Injury or Illness “must be filed within [ten] days oflcnowledge of any alleged work-related injury or illness that results in more than [seven] days of lost work.” NM WCA Form El.2 (filing instructions) (available at http://www.workerscomp.state.nm.us./pdf/el .pdf). The report “must be filed even if the employer disputes the worker’s claim of work-related injury or illness.” Id. “No claim for compensation . . . shall be barred prior to the filing of such report or within thirty days thereafter[.]” Section 52-1-59; see Anaya v. City of Santa Fe, 80 N.M. 54, 55, 56-57, 451 P.2d 303, 304, 305-06 (1969) (indicating that “barred” in what is now Section 52-1-59, formerly 1953 Comp., § 59-10-28, refers to the statute of limitations in workers’ compensation cases). {42} Employer’s own standard operating procedures contemplated an off-duty officer acting in an emergency situation to save a life. And as earlier indicated, based on Employer’s report and Mrs. Schultz’s compensation claim submitted to the Department of Justice, the Department determined that Worker died in the line of duty. Employer acknowledged that Worker died in the line of duty in its letter to Mrs. Schultz. And Employer implicitly acknowledged that it was required to file its First Report of Accident when the Chief said he would take care of getting the workers’ compensation paperwork finished and, as well, when Employer ultimately filed its report. {43} No citation of authority is required for the knowledge in workers’ compensation practice that, from time to time, employers contest a claim for compensation on the ground that a worker was not acting within the scope of employment at the time of injury. That defense to liability does not excuse an employer, such as Employer here, from ignoring its duty to file the first report of accident within ten days of learning of a worker’s death. Employer not only had actual notice of Worker’s death and the circumstances surrounding the death, Employer was on notice that Worker’s action might fall within the scope of Employer’s standard operating procedures and his duties as an officer and that his injury might fall within the purview of a work-related injury. Cf. Herman, 111 N.M. at 554, 556, 807 P.2d at 738, 740 (reversing the Court of Appeals, which had determined there was no evidence in the record that the defendant hospital “knew that the heart attack was caused by the decedent’s employment” and holding that the evidence did support knowledge when the defendant knew of the heart attack, knew of the decedent’s stressful schedule, and knew that the decedent had had an argument with one of the surgeons the day of the death (internal quotation marks omitted)). Thus, because Employer failed to file the report required under Section 52-l-58(A) until October 27, 2003, pursuant to Section 52-1-59, Mrs. Schultz had until October 27, 2003, at the earliest to file her complaint for compensation. Because she filed her original complaint with the WCA before that date, on October 1, 2003, that complaint was not barred by the limitations period in Section 52-1-31(B). See Herman, 111 N.M. at 556, 807 P.2d at 740 (holding a claim was not time barred when the employer had actual notice of an injury but failed to file the required report). A determination that Section 52-1-59 was inapplicable or irrelevant because Mrs. Schultz did not file her second complaint until June 2004 brings to the fore that the mediator’s recommended dismissal was appropriate and effective to trigger a requirement that Mrs. Schultz file an amended complaint by November 26, 2003. Mrs. Schultz’s Failures {44} I note here that Mrs. Schultz’s original complaint was on the WCA’s Workers’ Compensation Complaint printed form. The mediator’s recommended resolution stated that Mrs. Schultz could file an amended complaint. Mrs. Schultz’s June 18, 2004, complaint that was filed by her legal counsel was typewritten using the format of the WCA’s complaint form. I am unaware whether there exists a WCA form for or designating a complaint as an “amended complaint.” Mrs. Schultz’s June 18, 2004, complaint requested modification of the recommended resolution on the ground that Mrs. Schultz retained counsel who was available to consult with Mrs. Schultz during settlement negotiations. Her June 18, 2004, complaint asserted that “it is no longer equitable that the recommended resolution has prospective application.” Nothing in the record or argument shows whether the June 18, 2004, complaint was or was not intended to be the amended complaint referred to in the recommended resolution. Indeed, from the statements in the June 18, 2004, complaint, one could reasonably infer that the complaint was intended as an amended complaint. {45} Except as might be gleaned from what Mrs. Schultz stated in her June 18,2004, complaint, however, Mrs. Schultz did not specifically raise any issue or mount an attack during the WCA proceedings as to the propriety of recommending a dismissal and of a resulting case closure. Mrs. Schultz did not before the WCJ specifically object to, or otherwise attack or develop a record to question, that process or its effect. Nor did she raise such an issue on appeal. These preservation failures cause me to concur in the Opinion. But I must comment on the WCA process here. {46} Workers’ compensation adjudications are part of a specialized statutory administrative system and process separate from our court system. Ombudsmen, mediators, and judges employed within the WCA are expected to be fully knowledgeable in regard to the statutes and rules governing reporting requirements, deadlines, and tolling provisions that may affect relief. Surely when it comes to a bar to any relief based on a time deadline, a mediator should raise and discuss that concern with someone in Mrs. Schultz’s position. The WCA is not to be a trap for an unwary, pro se surviving spouse. {47} It appears that on October 1, 2003, the date that Mrs. Schultz filed her original complaint, an ombudsman informed her that there existed an issue with regard to the statute of limitations and the complaint would be untimely. That warning was obviously based on the fact that October 1, 2003, fell outside of the one-year period following August 17, 2002, the date of Worker’s death. The advice from the ombudsman is irrelevant here, however, because the Opinion assumes, and I agree, that the one-year period was tolled for the two-month period discussed earlier based on Employer’s conduct. {48} Several circumstances strike me as particularly disconcerting with respect to the WCA process. The mediation can result in a case closure and a bar to relief. Yet it is not reported. There exists no record of what was discussed. Interestingly, the mediator presumably did not think that Mrs. Schultz’s October 1, 2003, complaint was untimely filed, given that he did not recommend dismissal based on the timeliness of the complaint (which dismissal would have been a dismissal with prejudice). Instead, the mediator recommended dismissal without prejudice because Mrs. Schultz did not want to continue with the mediation until she obtained counsel. Nothing in the record indicates whether the mediator ever explained or discussed with Mrs. Schultz why her timely complaint had to be dismissed without prejudice instead of merely left in pending status until she obtained counsel; in fact, nothing in the record indicates that a dismissal procedure was required or proper. As well, nothing in the record indicates that the mediator explained or discussed with Mrs. Schultz whether she was confronted with a statute of limitations deadline within which to file the amended complaint or else she would lose her right to relief; how the time deadline would be established and play out; why she needed to “immediately” file an amended complaint; or why, upon obtaining a lawyer, the mediation would not simply continue under the timely filed original complaint. The mediator apparently did not refer Mrs. Schultz to an ombudsman with respect to these matters. I find it difficult to understand why at the close of the mediation Mrs. Schultz would, or should, have reasonably understood that the mediator’s recommended resolution of dismissal would follow the course taken by the WCA and the WCJ. I understand that Mrs. Schultz appears to have taken too long to engage counsel and file another complaint, but delay could have, and likely should have, been resolved differently than through a limitations bar. {49} To advise a pro se surviving spouse with respect to these matters would not, in my view, violate the policy in the Act against favoring one party over the other as proscribed in NMSA 1978, Section 52-5-1 (1990). Under the peculiar circumstances here, where Mrs. Schultz did not want to continue to mediate without a lawyer present, I have difficulty understanding why the workers’ compensation process could not, for one example, have accommodated her by, instead of a dismissal without prejudice and apparently without any explanation as to the effect of the dismissal, setting a definitive date for the continuation of the mediation and indicating in writing that Mrs. Schultz was required by then to have counsel present and that no further continuation would be granted. {50} Moreover, as I understand the process, a recommended resolution is to recommend a resolution of a dispute between the parties. Section 52-5-5(C); NMSA 1978, § 52-5-7(A) (1993); 11.4.4.10(C)(6)(a), (d) NMAC. The reason for the recommended dismissal, Mrs. Schultz’s desire to have a lawyer at the mediation, did not resolve a dispute. No resolution was called for in terms of liability or amount of compensation. The recommended resolution leaves no suggestion that Mrs. Schultz’s original complaint no longer served to stop the running of the statute of limitations. Indeed, upon the filing of Mrs. Schultz’s June 18, 2004, complaint, the WCA “reopened” the case with the same case number. If time or delay in workers’ compensation cases is a significant concern, could the mediator’s recommended resolution not have set a definitive deadline for the filing of the amended complaint, and could Mrs. Schultz not have been told of the dire consequences if it were not timely filed? Further, given the anomalous, counterintuitive process employed here, under the particular circumstances, would it not make sense to consider the June 18, 2004, complaint as relating back to the date of filing of the original complaint if it is shown that Employer would not be prejudiced? {51} Unfortunately, this Court is constrained by the failures of Mrs. Schultz to develop and argue throughout the administrative proceedings what seem to me to be critical facts, processes, and issues. Unfortunate because, but for the lack of preservation, this case appears classifiable as the height of procedural anomaly. See Bracken, 107 N.M. at 465, 760 P.2d at 157 (criticizing “procedural anomalies”). {52} As I earlier indicated, based on its technical correctness, I am constrained to concur in the Opinion. That constraint does not, however, prevent questioning whether the workers’ compensation system and process should work in the fashion seen here. And to deepen the concern, I think that Mrs. Schultz’s compensation claim stated a claim deserving of a trial on the merits. JONATHAN B. SUTIN, Judge